IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**VANITA BARNES,**

      **Plaintiff,**

      **vs.**                                    **Civ. No. 21-388  JFR**

**KILOLO KIJAKAZI, Acting Commissioner,**
**Social Security Administration,**

      **Defendant.**

## MEMORANDUM OPINION AND ORDER[1]

**THIS MATTER** is before the Court on the Social Security Administrative Record (Doc. 19)[2] filed October 8, 2021, in connection with Plaintiff's *Opposed Motion to Reverse and/or Remand,* filed February 11, 2022.  Doc.  26.  Defendant filed a Response on May 12, 2022.  Doc. 30.  Plaintiff filed a Reply on May 31, 2022.  Doc. 31.  The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c).  Having meticulously reviewed the entire record and the applicable law and being fully advised in the premises, the Court finds that Plaintiff's motion is well taken and **GRANTED**.  This case is being remanded for additional proceedings.

## I.  Background and Procedural Record

Plaintiff Vanita Barnes ("Ms. Barnes") alleges that she became disabled on February 1, 2010, at the age of forty-one years and seven months, because of bipolar disorder, depression,

---

[1]  Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all proceedings, and to enter an order of judgment, in this case.  (Docs. 6, 10, 11.)

[2] Hereinafter, the Court's citations to Administrative Record (Doc. 19), which is before the Court as a transcript of the administrative proceedings, are designated as "Tr."

arthritis, memory loss, chronic pain, anxiety, and post-traumatic stress disorder (PTSD).  Tr.

328-332.  Ms. Barnes completed the tenth grade in 1994.  Tr. 333.  Ms. Barnes has worked as a

checker/packer for a CPU manufacturer, a manufacturing machine operator, a railroad contract

van driver, and restaurant server.  Tr. 340.   Ms. Barnes stopped working on February 1, 2010,

due to her medical conditions.  Tr. 332.

On December 18, 2012, Ms. Barnes filed applications for Social Security Disability

Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"), 42 U.S.C. § 401

*et seq*. and for Supplemental Security Income ("SSI") under Title XVI of the Act, 42 U.S.C.

§ 1381 et seq.  Tr. 287-93, 294-300.  On April 25, 2013, Ms. Barnes's applications were denied.

Tr. 109-116, 117-24, 125, 126, 163-65, 166-69.  They were denied again at reconsideration on

October 3, 2013.  Tr. 127-36, 137, 173-75.  Upon Ms. Barnes's request, Administrative Law

Judge (ALJ) Frederick E. Upshall held a hearing on December 4, 2014.  Tr. 40-72.  Ms. Barnes

appeared in person at the hearing with attorney representative Michelle Baca.[3]  *Id*.  On May 26,

2015, ALJ Upshall issued an unfavorable decision.  Tr. 138-53.

On September 6, 2016, the Appeals Council remanded the unfavorable decision back to

ALJ Upshall.  Tr. 159-61.  The Appeals Council explained there were apparent conflicts between

the RFC and the DOT job requirements that neither the VE testimony nor the hearing decision

resolved.  Tr. 159.  The Appeals Council further explained that the ALJ had accorded

consultative examiner Gregory McCarthy, M.D.'s opinion great weight but found Ms. Barnes

capable of lifting and carrying more weight than Dr. McCarthy assessed without explanation.

Tr. 160.  The Appeals Council instructed ALJ Upshall to obtain additional evidence, if

warranted; give further consideration to Ms. Barnes's maximum RFC in light of the opinion

---

[3] Ms. Barnes is represented in these proceedings by Attorney Benjamin Decker.  Doc. 1.

evidence; obtain evidence from a VE to clarify the effect of the assessed limitations on the occupational base; and to offer Ms. Barnes an opportunity for another hearing.  Tr. 160-61.

On January 24, 2017, ALJ Upshall conducted a second hearing.  Tr. 73-108.  Ms. Barnes appeared in person with attorney representative Michelle Baca.  *Id.*  On August 15, 2017, ALJ Upshall issued an unfavorable decision.  Tr. 7-29.  On December 12, 2017, the Appeals Council issued its decision denying Ms. Barnes' request for review and upholding the ALJ's final decision.  Tr. 1-3.  On February 5, 2018, Ms. Barnes timely filed a Complaint seeking judicial review of the Commissioner's final decision.  Tr. 811-812 (USDC NM Civ. No. 18-116 LF (Doc. 1)).

On November 9, 2018, Ms. Barnes filed new applications for DIB and SSI.  Tr. 832, 836.

Before Ms. Barnes's new applications were processed, on August 5, 2019, Magistrate Judge Laura Fashing entered a Memorandum Opinion and Order remanding Ms. Barnes's case for additional proceedings.  Tr. 813-24.  Judge Fashing found that the ALJ "erred by omitting a limitation in Dr. Flynn's opinion from her RFC without explanation."  Tr. 818.  Judge Fashing explained as follows:

> Dr. Flynn conducted a psychological evaluation of Ms. Barnes on April 22, 2013, at the request of New Mexico Disability Determination Services.  AR 507-09. . . . During the mental status exam, Dr. Flynn noted that Ms. Barnes had lapses in her attention and that "it appeared to be difficult for her to stay on topic."  AR 508. Dr. Flynn noted that Ms. Barnes's "judgment appears to be impaired.  Her level of insight seems intact.  Her ability to reason is at the concrete level.  She has a small fund of general knowledge."  AR 509.  In assessing Ms. Barnes's current level of functioning, Dr. Flynn opined that Ms. Barnes was "able to pay attention and follow directions **although she needs re-direction**."  *Id.* (emphasis added).
>
> In assessing the RFC, the ALJ noted that Dr. Flynn found Ms. Barnes was able to "pay attention and follow directions with redirection."  AR 21.  However, the ALJ failed to explain why he rejected this limitation.[]  The ALJ failed to "explain why [Dr. Flynn's] opinion was not adopted."  SSR 96-8p, 1996 WL 374184, at *7.  The ALJ stated only that Dr. Flynn's opinion was "not generally consistent with the evidence or other opinion evidence contained in the record.  The claimant's

> evidence provided at the hearing level indicate that the claimant is **more** limited
> from a mental standpoint than was assessed by the consultative evaluator.
> Therefore, the undersigned affords only some weight to the opinion of Dr. Flynn."
> AR 23 (emphasis added).  Because the ALJ found Ms. Barnes **more limited** than
> Dr. Flynn, he was required to include the opined need for redirection (or some
> greater limitation) in the RFC.  This he did not do.

Tr. 819-20.  Judge Fashing's analysis included case law from other districts wherein courts have

held that the RFC must specifically address a need for redirection.  Tr. 821-22.  Judge Fashing

also explained that pursuant to the relevant regulations and Social Security Program Operations

Information, "the ability to work without redirection is a critical job skill."  Tr. 822.

> On October 19, 2019, the Appeals Council entered an Order stating:
>
> The U.S. District Court for the District of New Mexico (Civil Action Number 1:18-
> CV-00116) has remanded this case to the Commissioner of Social Security for
> further administrative proceedings in accordance with the fourth sentence of section
> 205(g) of the Social Security Act.
>
> Therefore, the Appeals Council vacates the final decision of the Commissioner of
> Social Security and remands this case to an Administrative Law Judge for further
> proceedings consistent with the order of the court.
>
> The claimant filed a subsequent claim for Title II and Title XVI disability benefits
> on November 9, 2018.  The Appeals Council's action with respect to the current
> electronic claim renders the subsequent claim duplicative.  Therefore, the
> Administrative Law Judge will consolidate the claims files, associate the evidence,
> and issue a new decision on the consolidated claims (20 CFR 404.952 and 416.1452
> and HALLEX I-1-10-10).  On remand, the Administrative Law Judge should apply
> the prior rules to the consolidated case pursuant to HALLEX I-5-3-30.
>
> In compliance with the above, the Administrative Law Judge will offer the claimant
> the opportunity for a hearing, take any further action needed to complete the
> administrative record and issue a new decision.

Tr. 828.

> In compliance with the Appeals Council's Order, no determination was entered on

Ms. Barnes's November 9, 2018, applications.  Tr. 835, 839.  Further, the matter was reassigned

to ALJ Eric Weiss, who conducted a hearing on November 13, 2020.  Tr. 740-67.  Ms. Barnes

appeared by phone and was represented by Attorney Benjamin Decker.[4]  *Id.*  On February 25, 2021, ALJ Weiss issued an unfavorable decision.  Tr. 713-31.  On April 27, 2011, Ms. Barnes timely filed a Complaint seeking judicial review of the Commissioner's final decision.  Doc. 1.

## II.  Applicable Law

### A.  Disability Determination Process

An individual is considered disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (pertaining to disability insurance benefits); *see also* 42 U.S.C. § 1382(a)(3)(A) (pertaining to supplemental security income disability benefits for adult individuals).  The Social Security Commissioner has adopted the familiar five-step sequential analysis to determine whether a person satisfies the statutory criteria as follows:

> (1) At step one, the ALJ must determine whether the claimant is engaged in "substantial gainful activity."[5]  If the claimant is engaged in substantial gainful activity, she is not disabled regardless of his medical condition.
>
> (2) At step two, the ALJ must determine the severity of the claimed physical or mental impairment(s).  If the claimant does not have an impairment(s) or combination of impairments that is severe and meets the duration requirement, she is not disabled.
>
> (3) At step three, the ALJ must determine whether a claimant's impairment(s) meets or equals in severity one of the listings described in Appendix 1 of the regulations and meets the duration requirement.  If so, a claimant is presumed disabled.

---

[4] The hearing was held telephonically due to the COVID-19 pandemic.  Tr. 742.

[5] Substantial work activity is work activity that involves doing significant physical or mental activities.  20 C.F.R. §§ 404.1572(a), 416.972(a).  "Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before."  *Id.*  "Gainful work activity is work activity that you do for pay or profit."  20 C.F.R. §§ 404.1572(b), 416.972(b).

(4) If, however, the claimant's impairments do not meet or equal in severity one of the listings described in Appendix 1 of the regulations, the ALJ must determine at step four whether the claimant can perform her "past relevant work." Answering this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the most [claimant] can still do despite [her physical and mental] limitations." 20 C.F.R. § 404.1545(a)(1). This is called the claimant's residual functional capacity ("RFC"). *Id.* §§ 404.1545(a)(3). Second, the ALJ determines the physical and mental demands of claimant's past work. Third, the ALJ determines whether, given claimant's RFC, the claimant is capable of meeting those demands. A claimant who is capable of returning to past relevant work is not disabled.

(5) If the claimant does not have the RFC to perform her past relevant work, the Commissioner, at step five, must show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. If the Commissioner is unable to make that showing, the claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

*See* 20 C.F.R. § 404.1520(a)(4) (disability insurance benefits); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146, n.5, 107 S.Ct. 2287, 2294, n.5, 96 L.Ed.2d 119 (1987). The burden shifts to the Commissioner at step five to show that the claimant is capable of performing work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Serv.*, 933 F.2d 799, 801 (10th Cir. 1991).

**B.    Standard of Review**

The Court reviews the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). A decision is based on

substantial evidence where it is supported by "relevant evidence [that] a reasonable mind might

accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118.  A decision "is not

based on substantial evidence if it is overwhelmed by other evidence in the record[,]" *Langley*,

373 F.3d at 1118, or if it "constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371,

1374 (10th Cir. 1992).  Therefore, although an ALJ is not required to discuss every piece of

evidence, "the record must demonstrate that the ALJ considered all of the evidence," and "the

[ALJ's] reasons for finding a claimant not disabled" must be "articulated with sufficient

particularity." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996).  Further, the decision

must "provide this court with a sufficient basis to determine that appropriate legal principles

have been followed." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005).  In undertaking

its review, the Court may not "reweigh the evidence" or substitute its judgment for that of the

agency.  *Langley*, 373 F.3d at 1118.

### III.  <u>Analysis</u>

The ALJ prefaced his determination as follows:

> In its remand order, the Appeals Council directed me to: (1) address the claimant's
> ability to perform in light of a consultative examiner's opinion that the claimant
> needed redirection, consistent with the District Court decision (*see* Ex. 12A).  The
> Appeals Council also directed me to: (2) consolidate the claim files, associate the
> evidence, and issue a new decision on the consolidated claims, related to
> subsequent Title II and Title XVI claims filed on November 9, 2018 (*see* Ex. 13A).
> In addition, the Appeals Council directed me to: (3) offer the claimant an
> opportunity to a hearing, take any further action needed to complete the
> administrative record, and issue a new decision (see Ex. 13A).  I addressed the
> Appeals Council directions in the evaluation discussed in more detail below.

The ALJ made his decision that Ms. Barnes was not disabled at step five of the sequential

evaluation.  Tr. 728-30.  The ALJ determined that Ms. Barnes met the insured status

requirements of the Social Security Act through June 30, 2012, and that she had not engaged in

substantial gainful activity from her alleged onset date of February 1, 2010.  Tr. 719.  He found

that Ms. Barnes had severe impairments of osteoarthritis of the bilateral hips and knees, lumbar

degenerative disc disease, major depressive disorder, generalized anxiety disorder, PTSD, and

bipolar disorder.  Tr. 719.   The ALJ also found that Ms. Barnes had nonsevere impairments of

left thumb tenosynovitis, gastroesophageal reflux disease, high cholesterol, vitamin deficiency,

hypertension, shoulder pain, head injuries, bronchitis, rhinitis, cough, elbow pain, dental pain,

and history of alcohol and drug abuse.  *Id.*   The ALJ determined, however, that Ms. Barnes's

impairments did not meet or equal in severity any of the listings described in the governing

regulations, 20 CFR Part 404, Subpart P, Appendix 1.  Tr. 719-22.  Accordingly, the ALJ

proceeded to step four and found that Ms. Barnes had the residual functional capacity to

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the
> claimant can lift 20 pounds occasionally and lift and carry 10 pounds frequently,
> and push and pull the same.  The claimant can walk, stand, or sit for 6 hours in an
> 8-hour workday with normally scheduled breaks.  The claimant can occasionally
> climb ramps and stairs, but never climb ladders, ropes, or scaffolds.  The claimant
> can occasionally stoop, crouch, kneel, and crawl.  The claimant can frequently
> handle and finger with the bilateral upper extremities.   The claimant can
> understand, remember, and carry out simple instructions and make commensurate
> work-related decisions in a work setting with few workplace changes.  The claimant
> can interact occasionally with supervisors, coworkers, and the public.  The claimant
> can maintain concentration, persistence, and pace for two hours at a time, during
> the workday with normally scheduled breaks.

Tr. 722.  The ALJ determined that Ms. Barnes could not perform any of her past relevant work,

but that considering Ms. Barnes's age, education, work experience, and residual functional

capacity, there are jobs that exist in significant numbers in the national economy that she can

perform.[6]  Tr. 728-31.  The ALJ, therefore, concluded that Ms. Barnes was not disabled.  *Id.*

---

[6] The vocational expert testified that Ms. Aragon would be able to perform the requirements of representative
occupations such as a Housekeeper, DOT #323.687-014, which is performed at the light exertional level with 850,000
jobs in national economy; a Laundry Classifier, DOT #361.687-014, which is performed at the light exertional level
with 41,000 jobs in the national economy; and a Garment Sorter, DOT #222.687-014, which is performed at the light
exertional level with 205,000 jobs in the national economy.  Tr. 730.

In support of her Motion, Ms. Barnes argues that (1) the ALJ failed to adequately explain his rationale for completely disregarding Dr. Flynn's opinion on redirection to task; (2) the ALJ failed to properly consider objective evidence in support of Dr McCarthy's opinion that Plaintiff's lifting is limited to 15 pounds occasionally; and (3) the ALJ failed to correctly address Plaintiff caring for her grandchildren.  Doc. 26 at 20-24.  Ms. Barnes request this Court "strongly consider remanding the case with instructions to award benefits."  *Id.* at 24-25.

For the reasons discussed below, the Court finds that ALJ's explanations for disregarding consultative examiner Susan M. Flynn, Ph.D.'s opinion regarding Ms. Barnes's need for redirection are not supported by substantial evidence.  This case, therefore, will be remanded for additional proceedings.

A.     **Susan M. Flynn, Ph.D.**

On April 22, 2013, Ms. Barnes presented to Susan M. Flynn, Ph.D., for a psychological evaluation.  Tr. 507-09.  Ms. Barnes complained of bipolar disorder, depression, arthritis, memory loss, chronic pain, anxiety and PTSD.  Tr. 507.  Dr. Flynn made general observations that included Ms. Barnes's transportation mode and arrival time, the source of her identification, her attire, and that "she talked a lot and it was difficult to get a clear history from her.  The events seem true but the years and dates are possibly mixed up."  *Id.*  Dr. Flynn took histories regarding Ms. Barnes's family background, education and work, alcohol and drug usage, treatment, and current medications.  Tr. 507-08.  On mental status exam, Dr. Flynn noted as follows:

> Ms. Barnes was casually dressed.  Her facial expression was mobile.  Her eye contact was good.  Her attitude was friendly.  *Her attention had lapses*.  Her speech was at a normal tone and *she spoke excessively*.  She did not show any signs of receptive or expressive aphasia.  However, *it appeared to be difficult for her to stay on topic*.

*Ms. Barnes's thought processes were mostly organized but there were tangents.* She denied any form of hallucinations but says she hears things like a phone ringing which no one else hears.  She denied any thoughts of harming anyone else.  She admitted she has "some" thoughts of suicide now but denied any attempts.

Vanita's affect was in the normal range with appropriate quality and normal energy.

On the MMSE, Ms.  Barnes scored 28 out of a possible 30 points.  She did the serial sevens using her fingers and made two mistakes.  She was oriented to date, time and place.  Her recent memory as briefly tested appeared to be intact.  She wrote legibly and clearly with her right hand.  She wears glasses for distance not for reading.  Her impulse control seems intact.  Her judgment appears to be impaired.  Her level of insight seems intact.  Her ability to reason is at the concrete level.  She has a small fund of general knowledge.

Ms. Barnes was cooperative throughout the testing and did what the examiner asked her to do so that this evaluation is considered a valid estimate of her current level of functioning.

Tr. 509 (emphasis added).

Dr. Flynn assessed Ms. Barnes's current level of functioning as follows:

Ms. Barnes is forty-fours years old with a limited education and some work history. She last worked in 2009.  *She is able to pay attention and follow directions although she needs re-direction.*  She says she gets along with other people.  She is frustrated because she can no longer do the physical work she has always done like chop wood and walk the dog.  She is afraid of falling again.  She cooks but can no longer peel potatoes because of the arthritis in her hands.  Her symptoms do not meet the criteria for post traumatic stress disorder.

*Id.* (emphasis added).

Dr. Flynn made an Axis I diagnosis of methamphetamine abuse, full sustained remission,

and provided an Axis V GAF score of 45.[7]

*Id.*

---

[7] The GAF is a subjective determination based on a scale of 100 to 1 of a "clinician's judgment of the individual's overall level of functioning."  *Am. Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders* (4th ed. 2000) at 32.  A GAF score of 41-50 indicates serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational or school functioning (e.g., no friends, unable to keep a job).  *See Am. Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders* (4th ed. 2000) at 34.

The ALJ accorded little weight to Dr. Flynn's explaining that

> Although it appears to be internally consistent, given some positive findings on examination, the assessment only included a diagnosis of meth abuse in remission, without any other conditions to explain or support finding a limitation in the need for redirection. I note that other objective medical exam in the record, as discussed above, did not support Dr. Flynn's restriction of the need for redirection, even given the evidence of other types of medically determinable mental impairments with related diagnoses and treatment. I also noted that Dr. Flynn did not elaborate on the vague restriction of the need for redirection, without any explanation for how often or under what circumstances the claimant might require such redirection, or if normal work breaks might accommodate any possible deficits in attention. In addition, I note that Dr. Flynn's assessment is based on a single evaluation without review of other objective treatment records, and that even the claimant's testimony regarding ability to function, as discussed above, did not support Dr. Flynn's restriction regarding attention.

Tr. 726. Elsewhere the ALJ added that "[m]ental health records indicated family relationships issues and conflict, but the record also contained evidence that showed the claimant could care for very young children by herself, without evidence to support a need for redirection to task." Tr. 728.

### B.     Relevant Arguments

Ms. Barnes raises four arguments with respect to the ALJ's failure to adequately explain his rationale for disregarding Dr. Flynn's opinion on the need for redirection. Doc. 26 at 20-22. First, she argues that the ALJ's general citation to "other objective medical exam in the record, as discussed above" is so general and vague as to render it unreviewable by the Court. *Id.* Ms. Barnes further argues that objective medical evidence from treating providers Dr. Sanchez[8] and Valle Del Sol[9] regularly document severe mental health symptoms and limitations that support Dr. Flynn's opinion on redirection. *Id.*

---

[8] Roland Sanchez, M.D., was Ms. Barnes's primary care physician.

[9] On April 7, 2014, Ms. Barnes initially presented to Valle Del Sol complaining of difficulty with social interactions, depression, anxiety, and symptoms of PTSD. Tr. 1227-34, 1238-42. On October 17, 2014, Glenna Giles, NP, RN, conducted a psychiatric evaluation of Ms. Barnes and indicated on mental status exam that Ms. Barnes was anxious

Second, Ms. Barnes argues that the ALJ's finding that Dr. Flynn's Axis I diagnosis of methamphetamine abuse in remission does not support finding a limitation for redirection amounts to speculation. *Id.* Ms. Barnes asserts that it is unclear, despite all the severe mental impairments the ALJ found at step two of his determination, how the ALJ concluded there is no diagnosis of record to support Dr. Flynn's assessment on redirection. *Id.*

Third, Ms. Barnes argues that the ALJ's explanation that Dr. Flynn's opinion is vague overlooks that Dr. Flynn is "crystal clear" that Ms. Barnes needs some amount of redirection to task. *Id.* Further, Ms. Barnes asserts that pursuant to the VE's testimony, *any* need for redirection after a probationary and training period is not tolerated by employers. *Id.*

Fourth, Ms. Barnes argues that the ALJ's conclusory explanation that Dr. Flynn's opinion is inconsistent with Mr. Barnes's testimony regarding her symptoms is insufficient. *Id.*

The Commissioner addresses Ms. Barnes's four arguments on this issue as follows. First, the Commissioner contends that the Court can discern that the ALJ's general citation to "other objective medical exam in the record, as discussed above" refers to the ALJ's discussion of the mental health signs and findings described on page 725 of the determination. Doc. 30 at 14. There, the Commissioner contends, the ALJ discusses both positive and negative examination findings relevant to the time period of Dr. Flynn's 2013 opinion and was entitled to draw a conclusion from the conflicting evidence that the record did not necessarily support a need for

---

and tearful at times, had a depressed and anxious mood, had adequate to poor fund of knowledge, and had poor to limited judgment and insight. Tr. 1240. NP Giles indicated that Ms. Barnes was a low functioning individual with a difficult life. Tr. 1239. NP Giles made Axis I diagnoses of Depressive Disorder, NOS, and Posttraumatic Stress Disorder Rule Out, and assessed an Axis V GAF score of 60. Tr. 1241. NP Giles instructed Ms. Barnes to see a therapist on a regular basis and prescribed Clonazepam and Vistaril. Tr. 1241-42.

The medical evidence record demonstrates that Ms. Barnes's compliance with counseling and medication therapy was inconsistent. Ms. Barnes presented to Valle Del Sol twice each year in 2015, 2016, 2017 and 2018. Tr. 1243-47, 1248-62, 1264-81, 1282-86, 1304-11, 1312-20 1321-44, 1345-48. She presented four times in both 2019 and 2020. 1349-50, 1351-82, 1619-27, 1630-38, 1639-47, 1650-55, 1656-61, 1709-32.

redirection.  *Id.*  The Commissioner contends that ALJ also discussed more recent records which allows the Court to follow the ALJ's explanation of how the more recent evidence did not support Dr. Flynn's opinion that Ms. Barnes required redirection.  *Id.*

Second, the Commissioner contends that Ms. Barnes's speculation argument amounts to its own speculation; *i.e.,* that even if a substance abuse diagnosis does not support a limitation of redirection, then depression, anxiety, PTSD and bipolar disorder could.  Doc. 30 at 12.  That aside, the Commissioner contends that the ALJ's rejection of Dr. Flynn's Axis I diagnosis as a basis for needing redirection is not speculative "because it was consistent with the conclusions of the state agency psychological reviewers, Drs. Simon and Mohney, who also pointed out that Dr. Flynn recorded that Plaintiff only had substance abuse in remission, despite Plaintiff's allegations of cognitive and affective disorders."  Doc. 30 at 12.  The Commissioner further contends that the ALJ discussed the findings from Dr. Flynn's mental status exam of Ms. Barnes that supported the ALJ's rejection of Dr. Flynn's redirection limitation.  *Id.* at 13.

Third, the Commissioner contends that the ALJ reasonably pointed out that Dr. Flynn did not explain how often or under what circumstances Ms. Barnes would need redirection or if normal work breaks might accommodate a possible attention deficit.  Doc. 30 at 15-16.  That aside, the Commissioner asserts that the ALJ limited Ms. Barnes to simple instructions in a setting with few workplace changes and maintaining concentration, persistence, and pace for two hours with normally scheduled breaks.  *Id.*  This limitation, the Commissioner asserts, contemplates a work environment without a complicated structure that could lead to a need for redirection.  *Id.*

Fourth, the Commissioner asserts that the ALJ's explanation that Dr. Flynn's opinion was inconsistent with Ms. Barnes's testimony "appears to have been discussing Plaintiff's testimony as a whole where she did not require redirection during questions." Doc. 30 at 16.

### C.   <u>Legal Standard</u>

The applicable regulations and case law require an ALJ to consider all medical opinions and discuss the weight assigned to those opinions.[10] *See* 20 C.F.R. §§ 404.1527(c); *see also Hamlin,* 365 F.3d at 1215 ("[a]n ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional."). "An ALJ must also consider a series of specific factors in determining what weight to give any medical opinion." *Hamlin*, 365 F.3d at 1215. (citing *Goatcher v. United States Dep't of Health & Human Servs*., 52 F.3d 288, 290 (10th Cir. 1995)).[11] An ALJ's decision need not expressly apply each of the six relevant factors in deciding what weight to give a medical opinion. *Oldham v. Astrue*, 509 F3d. 1254, 1258 (10th Cir. 2007). However, the decision must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and reasons for that weight." *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). The ALJ's decision for according weight to medical opinions must be supported by substantial evidence. *Hackett v. Barnhart*, 395 F.3d 1168, 1174 (10th Cir. 2005). An ALJ is required to give controlling weight to the opinion of a treating physician if it is supported by medically

---

[10] The agency issued new regulations regarding the evaluation of medical source opinions for claims filed on or after March 27, 2017. *See* "Revisions to Rules Regarding the Evaluation of Medical Evidence," 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017); (Doc. 19 at 4 n.3.). However, because Ms. Barnes filed her claim on December 12, 2012, the previous regulations for evaluating opinion evidence apply to this matter. *See* 20 C.F.R. 416.927.

[11] These factors include the examining relationship, treatment relationship, length and frequency of examinations, the degree to which the opinion is supported by relevant evidence, the opinion's consistency with the record as a whole, and whether the opinion is that of a specialist. *See* 20 C.F.R. § 404.1527(c)(2)-(6).

acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record.  *Id.*  Generally the opinion of a treating physician is given more weight than that of an examining consultant, and the opinion of a non-examining consultant is given the least weight of all.  *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004).  "If an ALJ intends to rely on a nontreating physician or examiner's opinion, he must explain the weight he is giving to it."  *Hamlin*, 365 F.3d at 1215.

Ultimately, the ALJ must give good reasons that are "sufficiently specific to [be] clear to any subsequent reviewers" for the weight that she ultimately assigns the opinion.  *Langley*, 373 F.3d at 1119 (citation omitted).  Failure to do so constitutes legal error.  *See Kerwin v. Astrue*, 244 F. App'x. 880, 884 (10th Cir. 2007) (unpublished).  In addition, "[a]n ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) (citations omitted).  Instead, an ALJ "must ... explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." SSR 96-8p, 1996 WL 374184, at *7.  Further, the Commissioner may not rationalize the ALJ's decision post hoc, and "[j]udicial review is limited to the reasons stated in the ALJ's decision." *Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008) (citation omitted).

### D.    The ALJ's Reasons for Rejecting Dr. Flynn's Assessed Limitation of Redirection Are Not Supported By Substantial Evidence

The Court will address each of the ALJ's explanations for rejecting Dr. Flynn's assessed limitation of redirection in turn.

The ALJ rejects Dr. Flynn's assessment regarding Ms. Barnes's ability to do work-related mental activities, in particular her need for redirection, by first explaining that Dr. Flynn's

diagnosis of methamphetamine abuse in remission fails to support a redirection limitation.[12]

This is insufficient.  The ALJ offers no medical or record-based evidence to support his

conclusion that a diagnosis of methamphetamine abuse in remission is inconsistent with

limitations in the ability to concentrate and persist at tasks.[13]  As such, the Court agrees with

Ms. Barnes that the ALJ's explanation amounts to impermissible speculation.  *See generally*

*Langley v. Barnhart*, 373 F.3d 1116, 1121 (10th Cir. 2004) ("In choosing to reject the treating

physician's assessment, an ALJ may not make speculative inferences from medical reports and

may reject a treating physician's opinion outright only on the basis of contradictory medical

evidence and *not due to his or her own credibility judgments, speculation or lay opinion.*")

(citations omitted; emphasis in original)).

The ALJ next explains that "other objective medical exam in the record, as discussed

above," and "evidence of other types of medically determinable mental impairments" do not

support Dr. Flynn's assessment regarding redirection.  Tr. 726.  The Commissioner directs the

Court to the ALJ's discussion of the medical evidence on page 725 of the determination.

Assuming *arguendo* this discussion is the "other objective evidence medical exam in the record,

as discussed above," to which the ALJ refers, there the ALJ cites a number of treatment notes

---

[12] Ms. Barnes reported to Dr. Flynn that she "tried" meth from "35 to 2007" which "seems to be from 2003 through 2007."  Tr. 508; *see also* Tr. 1141, 1239.  Elsewhere Ms. Barnes reported meth use for five years ending in 2007, with continued cravings at times.  Tr. 401, 1669.  Ms. Barnes also reported relapses in 2016 and 2018.  Tr. 1296, 1327.

[13] "[R]emission from [methamphetamine dependence] is associated with global cognitive impairments, including speed of information processing, learning, memory, motor, language, visuoconstruction, attention, working memory, and executive function."  *Everyday problems with executive dysfunction and impulsivity in adults recovering from methamphetamine addiction*.  Available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4809534/.  A court may take judicial notice of factual information located in postings on government websites.  *Brown v. Comm'r of Soc. Sec. Admin.*, No. CA 1:14-3472-SVH, 2015 WL 4095643, at *16 (D.S.C. July 6, 2015) (citing *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir.2009) (court may "properly take judicial notice of matters of public record")); *see also Guttman v. Khalsa*, 669 F.3d 1101, 1127 n. 5 (10th Cir. 2012) ("This Court recognizes its authority to take judicial notice of public records.").

from which he extracts evidence of mental health signs and findings such as, *inter alia*, anxious and sad mood, occupied thought content, angry mood, anxious behavior, tearful, flat affect, poor fund of knowledge, rapid and pressured speech, rambling thought process, poor concentration, poor judgment, poor insight, and poor impulse control.  Tr. 725.  The ALJ also extracts evidence of, *inter alia*, normal mood and affect, full orientation, normal behavior, normal thought content, normal speech, concrete thought process, intact cognition, and no psychotic thoughts.  *Id.* Notably absent in the ALJ's discussion, however, is any reconciliation of the conflicting evidence.  In other words, although the ALJ identifies inconsistencies in the record, he fails to explain how they were considered and resolved.  "The ALJ must build an accurate and logical bridge between the evidence and his determination."  *Shelton v. Saul*, 19-CV-1039, 2021 WL 912633, at *8 (D.N.M. Mar. 10, 2021).  The ALJ did not do so here.  Instead, the ALJ appears to have relied solely on aspects of the records that were favorable to a finding of disability, which is not permitted.  *Haga*, 482 F.3d at 1208; SSR 96-8p, 1996 WL 374184, at *7.

Next, the ALJ explains he rejected Dr. Flynn's opinion because Dr. Flynn did not elaborate on the vague restriction of redirection by providing under what circumstances Ms. Barnes might require redirection and how often.  The Court finds this insufficient.  To begin, the ALJ's explanation ignores that the singular purpose of Dr. Flynn's consultative exam was to determine Ms. Barnes's ability to do *work-related* mental activities *in the workplace*.  As such, there is no basis for the ALJ's putative need for elaboration regarding the circumstance to which Dr. Flynn's assessed limitation applies.  Similarly, Dr. Flynn's treatment note clearly indicates Ms. Barnes's challenges with concentration and persistence and the necessity of redirection throughout the short course of her consultative exam.  From the outset Dr. Flynn made a general observation that it was difficult to get a clear history from Ms. Barnes because she "talked a lot."

17

Tr. 507.  Dr. Flynn then indicated on mental status exam that Ms. Barnes had lapses in her attention, spoke excessively, had difficulty staying on topic, and had tangents in her thought process.  Tr. 508.  Given the purpose for and context of Dr. Flynn's treatment note, therefore, the Court is not persuaded that Dr. Flynn's assessed limitation regarding redirection is so vague that it provides a legitimate basis for the ALJ to reject Dr. Flynn's opinion.

Next, the ALJ rejects Dr. Flynn's assessed limitation because it is "based on a single evaluation without review of other objective treatment records[.]"  Tr. 726.  It is well settled in the Tenth Circuit that a limited treatment history by itself is an invalid basis for rejecting a medical source opinion.  *Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012).  Moreover, all things being equal, the opinion of a physician who has examined a claimant, even if only once, is placed above the opinion of a physician who has never seen the claimant at all and only reviewed the medical record.  *See Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004).  Here, Dr. Flynn's assessment is the only examining medical opinion evidence in the record.[14]

---

[14] The ALJ accorded little or no weight to *all* of the medical opinion evidence related to Ms. Barnes's ability to do work-related mental activities.  On April 25, 2013, nonexamining State agency psychological consultant Sheri L. Simon, Ph.D., reviewed the medical evidence record at the initial stage of consideration.  Tr. 121-22.  Dr. Simon prepared a Psychiatric Review Technique and rated the degree of Ms. Barnes's functional limitation in the area of activities of daily living as none, in the area of maintaining social functioning as none; and in the area of maintaining concentration, persistence or pace as mild.  *Id.*  Dr. Simon explained that Ms. Barnes's limitations arose solely from substance use, in remission, and found no evidence of other mental impairments.  *Id.*  Notably, Dr. Simon accorded "great weight" to Dr. Flynn's opinion evidence.  *Id.*  Dr. Simon did not prepare a Mental Residual Capacity Functional Assessment.

On September 26, 2013, nonexamining State agency psychological consultant Carol Mohney, Ph.D., affirmed Dr. Simon's PRT ratings and assessed mental impairment at reconsideration.  Tr. 132-33.  Dr. Mohney similarly did not prepare a Mental Residual Capacity Functional Assessment.

The ALJ accorded little weight to both Dr. Simon's and Dr. Mohney's PRT ratings and assessed mental impairment explaining that the medical evidence record supported a finding of additional severe mental impairments.  Tr. 726-27.

On June 6, 2013, treating physician Roland Sanchez, M.D., prepared a "To Whom It May Concern" letter identifying Ms. Barnes's mental and physical impairments and stating, without more, that "I found Vanita to be medically disabled secondary to her medical illnesses listed above."  Tr. 510.  The ALJ accorded no weight to Dr. Sanchez's statement explaining that he did not provide any functional assessment of Ms. Barnes's ability to do work or mental work-related activities and had offered an opinion on an issue reserved for the Commissioner.  Tr. 726.

The ALJ next rejected Dr. Flynn's assessed limitation of redirection explaining that "even the claimant's testimony regarding her ability to function, as discussed above, did not support Dr. Flynn's restriction regarding attention."  Tr. 726.  The only testimony the ALJ discussed at step four related to Ms. Barnes's mental health impairments was that "claimant indicated she took pain medication and medication for her psychiatric problems.  She also indicated she experienced side effects including dry mouth and breathing issues, along with itching, drowsiness, hand swelling, and agitation.  The claimant reported her medication sometimes helped."[15]  Tr. 723.  It is not clear to the Court how Ms. Barnes's cited testimony supports the ALJ's rejection of Dr. Flynn's assessed limitation on redirection.  And while the Commissioner argues that the ALJ "appears to have been discussing Plaintiff's testimony as a whole where she did not require redirection during questions," this amounts to post hoc rationalization, which the Court may not consider.  *Carpenter*, 537 F.3d at 1267.  The ALJ must only "give good reasons" that are "sufficiently specific to make clear to any subsequent reviewers the weight" he gave to the opinion "and the reasons for that weight." SSR 96-2P, 1996 WL 374188 at *5 (July 2, 1996).  Put differently, an ALJ's reasons must be sufficiently specific to permit meaningful review. *See Clifton,* 79 F.3d at 1009.  The ALJ's reason fails to meet this standard.

Lastly, the ALJ explained elsewhere in his determination that "[m]ental health records indicated family relationships issues [sic] and conflict, but the record also contained evidence

---

[15] The ALJ discussed Ms. Barnes's testimony at step three when rating her degree of mental function as follows:  "At the hearing, the claimant testified she experienced forgetfulness."  Tr. 721.  "The claimant testified she stopped living with her grandchildren in March 2020.  She testified her stepdaughter stayed with her and helped her.  She also testified she experienced aggressive behavior around police officers."  *Id.*  "The claimant testified she could perform some household chores but she walked away from what she was doing and did not finish them.  She testified her children became angry with her because she stopped what she was doing and she did not know why."  *Id.*  "The claimant testified she could sometimes do her own household chores, including repairs, but she had problems due to lack of hand strength, along with memory issues."  *Id.*

that showed the claimant could care for very young children *by herself*, without evidence to support a need for redirection to task." Tr. 728 (emphasis added).  Ms. Barnes argues that a plain reading of the evidence demonstrates that she is not good at caring for her grandchildren.  Doc. 26 at 23-24.  She explains that her grandchildren were taken from her by CYFD for failing to protect them from access to a "bong filled with weed/meth water."  *Id.*  She further argues that there is no evidence to support the ALJ's inference that having temporary custody of her grandchildren is inconsistent with her alleged symptoms.  *Id.*

The Commissioner argues that Ms. Barnes is asking the Court to reweigh the evidence in her favor.  Doc. 30 at 19-20.  The Commissioner further argues that the ALJ recognized that Ms. Barnes's "home life was not perfect and reasonably found that notwithstanding the problems at home, Plaintiff's ability to care for two young grandchildren cut against her claims of disabling physical and mental limitations."  *Id.*

An ALJ's decision for according weight to a medical opinion must be supported by substantial evidence.  *Hackett*, 395 F.3d at 1174.  The ALJ correctly notes that Ms. Barnes had temporary custody of her two grandchildren for approximately one year.  The Court, however, finds that the ALJ's reliance on Ms. Barnes's temporary guardianship of her two grandchildren failed to take into account probative evidence surrounding the guardianship and its termination.

The objective medical evidence indeed demonstrates that Ms. Barnes had ongoing issues with family crises and housing insecurity.  The record demonstrates that in the fall of 2011, Ms. Barnes lived for some time in a domestic violence shelter after her live-in boyfriend hit her 15-year old daughter.  Tr. 438.  In April of 2013, at the time of Dr. Flynn's consultative exam, Ms. Barnes reported she and her then seventeen year-old daughter were living with a boyfriend.  Tr. 507.  In October 2014, Ms. Barnes reported living "on a property of an older couple" while in

a relationship with their "younger son" who did not live with her.  Tr. 1239.  In September 2015, Ms. Barnes reported living with a boyfriend.  Tr. 1252.  In February 2016, Ms. Barnes reported being forced to move out of her boyfriend's house and moving in with her daughter's boyfriend's mother.  Tr. 1271. In early 2017, Ms. Barnes reported living with her sons, but described herself as homeless because she did not have anywhere permanent to stay.  Tr. 1296.  In late 2017, Ms. Barnes reported living in a camper on her son's land.  Tr. 1308.  In February 2018, Ms. Barnes reported being evicted from her house due to her boyfriend's legal troubles.  Tr. 1316, 1424.  In May 2018, Ms. Barnes reported living at her "ex's house" because she was evicted from her trailer.  Tr. 1325.  In April 2019, Ms. Barnes reported *living with a relative* and taking care of her grandchildren because their mother was using heroin.  Tr. 1350.  In June 2019, Ms. Barnes reported having temporary custody of her grandchildren, being homeless and *staying at her ex-husband's house*.  Tr. 1363.  In September 2019, Ms. Barnes reported having located housing through the VDS Housing Program.  Tr. 1621.  In March 2020, Ms. Barnes reported that CYFD removed her grandchildren from her custody after an incident where the 3 year old drank "bong water with marijuana and methamphetamine in it" resulting in a hospital stay.[16]  Tr. 1650.  Ms. Barnes also reported being evicted from her apartment due to complaints about the "constant yelling and banging in the apartment" and "unwelcome guests who are doing suspicious activities."[17]  Tr. 1651, 1657.  In June 2020, Ms. Barnes reported living in a trailer in the "mesa" with no electricity and no water.  Tr. 1711.

---

[16] Ms. Barnes reported that it was her nephew who left the bong out and that her *daughter was living with her* and let people into the house while she was sleeping.  Tr. 1650.

[17] Brandy Heaton, NP, of Valle Del Sol noted that Ms. Barnes was hard to follow due to frequent changes in her story and story line.  Tr. 1651.

The foregoing fails to demonstrate that Ms. Barnes ever lived with or took care of her grandchildren *by herself*, as purported by the ALJ, and indisputably demonstrates an ongoing history of family and housing instability.  Moreover, the Court finds only a strained reading of the evidence regarding the circumstances of the terminated guardianship could lead the ALJ to conclude that it is not supportive of Dr. Flynn's observations that Ms. Barnes had difficulty paying attention and required redirection.

For all of the foregoing reasons, the Court finds that the ALJ's explanations for rejecting Dr. Flynn's assessment regarding Ms. Barnes's need for redirection are not supported by substantial evidence.  Because the need for redirection could result in a finding that Ms. Barnes is disabled, the ALJ's failure to provide legitimate reasons supported by substantial evidence for rejecting Dr. Flynn's assessed limitation requires remand.

### E.    <u>Remaining Issues</u>

The Court will not address Ms. Barnes's remaining claims of error because they may be affected by the ALJ's treatment of this case on remand.  *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

### F.    <u>The Court Will Remand for Additional Administrative Proceedings</u>

District courts have discretion to remand either for further administrative proceedings or for an immediate award of benefits.  *Ragland v. Shalala*, 992 F.2d 1056, 1060 (10th Cir. 1993). In making this decision, courts should consider both "the length of time the matter has been pending and whether or not 'given the available evidence, remand for additional fact-finding would serve [any] useful purpose but would merely delay the receipt of benefits.'"  *Salazar v. Barnhart*, 468 F.3d 615, 626 (10th Cir. 2006) (quoting *Harris v. Sec'y of Health & Human Servs.*, 821 F.2d 541, 545 (10th Cir. 1987)).  When the Commissioner has failed to satisfy her burden of

proof at step five, and when there has been a long delay as a result of her erroneous disposition of the proceedings, remand for an immediate award of benefits may be appropriate. *Ragland*, 992 F.2d at 1060 (remanding for an immediate award of benefits "[i]n light of the Secretary's patent failure to satisfy the burden of proof at step five, and the long delay that has already occurred as a result of the Secretary's erroneous disposition of the proceedings"). The Commissioner "is not entitled to adjudicate a case *ad infinitum* until [she] correctly applies the proper legal standard and gathers evidence to support [her] conclusion." *Sisco v. U.S. Dep't of Health & Human Servs.*, 10 F.3d 739, 746 (10th Cir. 1993) (quoting *Thaete v. Shalala*, 826 F. Supp. 1250, 1252 (D. Colo. 1993)).

Here, Ms. Barnes asks the Courts to strongly consider remanding the case with instructions to award benefits. Doc. 26 at 24. She argues that there is significant evidence to support Dr. Flynn's opinion that Plaintiff suffers at least some limitation working without special supervision. *Id.* The Court finds that it remains possible that the ALJ could find that Ms. Barnes was not disabled during the relevant period of time after properly evaluating the medical record and medical opinion evidence. The Court, therefore, is remanding for additional administrative proceedings.

### IV.  <u>Conclusion</u>

For the reasons stated above, Ms. Barnes's Motion to Reverse or Remand Administrative

Agency Decision and Memorandum in Support (Doc. 26) is **GRANTED.**

**JOHN F. ROBBENHAAR**
**United States Magistrate Judge,**
**Presiding by Consent**